IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| BRENDA J. PENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:10cv235-MHT |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Brenda J. Penn filed this lawsuit against
defendants State of Alabama and Alabama Department of
Corrections (ADOC), as well as the following ADOC
employees in both their individual and official
capacities: ADOC Commissioner Richard F. Allen, Warden
John Cummins, II, Captain Janet Hicks, Captain Victor
Napier, Lieutenant Mark Loman, and Sergeant Franetta
Riley. Penn claims that these defendants violated her
rights under the Age Discrimination Act of 1975, 42
U.S.C. §§ 6101-6107; Title VII of the Civil Rights Act of
1964, as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e-17;

42 U.S.C. § 1981; 42 U.S.C. § 1983; and the First, Fifth, and Fourteenth Amendments to the United States Constitution.  Penn also asserts state-law claims against all defendants for libel and slander, intentional infliction of emotional distress, and tortious interference with a contractual relationship. Jurisdiction over her federal claims is proper pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) as well as 2000e-5(f)(3) (Title VII); supplemental jurisdiction over the state claims is proper under 28 U.S.C. § 1367.

Now before the court is the defendants' motion for summary judgment as to all claims.  For the reasons that follow, the motion will be granted.


## I. BACKGROUND

Penn has been employed as a correctional officer at Kilby Correctional Facility since 1976.  Her claims in this case arise out of three separate incidents,

described below.  Penn alleges that these incidents have caused her to feel embarrassed and physically ill, and, as a result, she has decided to retire from her position.

### A.  Disagreement with Sergeant Riley

In October 2009, Penn voiced concerns to Sergeant Riley about the lack of a second key for Kilby's visitation restroom.  In addition, she reported an inmate's request for a coat.  According to Penn, this led Riley to call her a "lazy ass officer."  Penn "wrote up" Riley the following day by filing a complaint with her supervisors; she subsequently filed a formal grievance. Warden Cummins later corrected the issue regarding the visitation restroom key, though Penn does not know whether Riley was subjected to any employee discipline for the alleged incident.  Penn herself was never written up or subjected to any discipline for the alleged incident.

### B.   Disagreement with Lieutenant Loman

In December 2009, Penn encountered a problem with a segregation inmate.  The inmate called for Penn to come to his cell.  Once she was there, he looked at her while masturbating.  This prompted Penn to call for Lieutenant Loman, who was a segregation-unit supervisor.  According to Penn, when Loman arrived, he got in Penn's face and shouted at her.  Because this embarrassed her, Penn reported Loman to her supervisor, Lieutenant Cash, and she subsequently made a written complaint to Captain Napier.  A day or two later, Penn discussed the incident with Captains Napier and Hicks.  Napier stated that Loman had been wrong and that he had already been counseled about the incident.  Penn was never written up or subjected to any discipline for this incident.

### C.   Disagreement Regarding Handicapped Parking

In December 2009, Penn was having problems with her knee and was waiting to have surgery.  For this reason,

4

she decided to park in handicapped-parking spaces at Kilby, using a handicapped sticker that belonged to her daughter. After doing this for three weeks, Captain Napier asked her about it, and she admitted to using her daughter's handicapped sticker. Penn received a "counseling session," the mildest form of employee discipline. She subsequently went to her doctor and obtained her own handicapped-parking sticker. She had no further problems with parking after that point.

## II. SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### III.   DISCUSSION

#### A.   Failure to Comply With Rule 56

With just a few exceptions, Penn does not support her factual allegations with specific references to the evidentiary record.  Rule 56(c)(1) of the Federal Rules of Civil Procedure states as follows:

> "(1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

> adverse party cannot produce admissible
> evidence to support the fact."

Fed. R. Civ. P. 56(c)(1).

Further, the court's scheduling order in this case
states as follows, in pertinent part:

> "In all briefs filed by any party
> relating to the motion, the discussion
> of the evidence in the brief must be
> accompanied by a specific reference, by
> page and line, to where the evidence can
> be found in a supporting deposition or
> document. Failure to make such specific
> reference will result in the evidence
> not being considered by the court."

Scheduling order at § 2 (Doc. No. 37).

Because Penn has not complied with Rule 56(c)(1) or
the court's scheduling order, the court will grant
summary judgment against Penn on all of her claims.
However, as an independent ground for granting summary
judgment, the court will also separately review each of
Penn's claims based on its understanding of the factual
record in this case.

7

## B. Age Discrimination Act Claims

Penn claims that the defendants violated her rights under the Age Discrimination Act by singling her out for ill treatment. (The court notes that Penn has not asserted any claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634.)

The Age Discrimination Act applies to only federally funded "programs" or "activities," 42 U.S.C. § 6102; the act does not apply to any "employment practice of any employer." 42 U.S.C. § 6103(c)(1). Therefore, because Penn correlates her allegations of age discrimination with her ADOC employment, she has no claim for relief under the Age Discrimination Act. See Tyrrell v. City of Scranton, 134 F.Supp.2d 373, 381-84 (M.D. Pa. 2001) (Caputo, J.) (holding that the Age Discrimination Act does not allow a plaintiff to seek relief based on allegations of employment discrimination). Further, even if the act could be applied to employment discrimination, the statute does not create a private right of action for

8

damages.   See id. at 384 (holding that "the [Age Discrimination Act] cannot support an action for damages").

For these reasons, summary judgment will be granted against Penn on her Age Discrimination Act claims as to all defendants.


## C.  Title VII Claims

The defendants argue that summary judgment should be granted on Penn's Title VII claims because she has not filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), nor has she received a "right-to-sue" letter from the EEOC regarding these claims.  "Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies."   Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  To exhaust her remedies, the plaintiff must file a timely charge of discrimination with the EEOC.  Id.  For a charge to be

timely in a non-deferral State such as Alabama, the EEOC charge must be filed within 180 days of the last discriminatory act.   42 U.S.C. § 2000e-5(e)(1). Generally, in order to exhaust administrative remedies, a plaintiff must receive a "right-to-sue" letter before a judicial complaint may be filed.   See Forehand v. Florida State Hosp. at Chattahoochee, 89 F.3d 1562, 1567 (11th Cir. 1996) (explaining that receipt of a right-to-sue letter is a condition precedent to bringing suit in district court that is subject to equitable modification).

In this case, although Penn sent copies of internal grievances to the EEOC, which she had filed with the ADOC, she admitted that she has not filed a formal charge of discrimination with the EEOC.  Further, although Penn claims to have received a "right-to-sue" letter, a closer examination of this document shows that it merely acknowledges the EEOC's receipt of Penn's internal

grievances and explains the procedure for filing an actual charge of discrimination.

For these reasons, summary judgment will be granted against Penn on her Title VII claims as to all defendants.


D.   § 1981 Claims

Penn presents many of her civil-rights claims as causes of action under both § 1981 and § 1983. The defendants argue that, to the extent the actions against the individual defendants are made under § 1981, the defendants are entitled to summary judgment because the individual defendants are state actors.

"[Section] 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." Bryant v. Jones, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing Butts v. County of Volusia, 222 F.3d 891, 894-95

(11th Cir. 2000)). Thus, summary judgment must be granted against Penn on her § 1981 claims (to the extent they are not based on § 1983) against the individual defendants.

Further, Penn's § 1981 claims against the State of Alabama and ADOC are barred by Eleventh Amendment immunity. <u>Alyshah v. Georgia</u>, 239 Fed. Appx. 473, 474 (11th Cir. 2007) (affirming dismissal of § 1981 claims on Eleventh Amendment immunity grounds, finding no abrogation of state immunity); <u>Abusaid v. Hillsborough County Bd. Of County Com'rs</u>, 405 F.3d 1298, 1303 (11th Cir. 2005) (internal quotations omitted) ("[T]he law is well-settled that Eleventh Amendment immunity bars suits brought in federal court when an 'arm of the State' is sued.").

Accordingly, summary judgment will be granted against Penn on her civil-rights claims to the extent that they are brought under § 1981.

### E.  § 1983 Claims

Penn brings several § 1983 claims.  First, she alleges that she has suffered a violation of her civil rights by being subjected to sex discrimination, in that she was singled out for ill treatment because she is female and also because she is not in a sexual relationship with any of her supervisors.  Second, she alleges that she has suffered from retaliation and a hostile-work environment.  Third, she alleges violations of her due-process and equal-protection rights, charging that she has been mistreated because she is a female over the age of 40.  Fourth and finally, she alleges that her First Amendment rights have been violated.


#### 1.  Claims Against State of Alabama, ADOC, and Individual Defendants in Their Official Capacities

Penn's claims against the State of Alabama and ADOC are barred by Eleventh Amendment immunity.  Alyshah, 239 Fed. Appx. at 474 (affirming dismissal of § 1983 claims on Eleventh Amendment immunity grounds, finding no

13

abrogation of state immunity); <u>Abusaid</u>, 405 F.3d at 1303. Therefore, summary judgment will be granted against Penn on her § 1983 claims as to these defendants.

Penn's claims against the individual defendants in their official capacities are also barred by Eleventh Amendment to the extent that Penn is seeking damages, but not to the extent that Penn seeks prospective-injunctive relief. <u>Welch v. Laney</u>, 57 F.3d 1004, 1008 (11th Cir. 1995) (explaining that the Eleventh Amendment does not bar suit against state employees in their official capacities to the extent that a plaintiff seeks prospective-injunctive relief, as opposed to damages). In this case, the individual defendants argue that Penn is merely seeking damages, not injunctive relief. However, it appears from Penn's amended complaint that she is also seeking prospective-injunctive relief. Therefore, summary judgment is inappropriate on Penn's § 1983 claims as to the individual defendants in their official capacities on the basis of sovereign immunity.

However, as stated below, summary judgment is appropriate on Penn's § 1983 claims as to these defendants for other reasons.

### 2.  Claims Against Commissioner Allen, Warden Cummins, Captain Napier, and Captain Hicks

Penn's § 1983 claims against Commissioner Allen, Warden Cummins, Captain Napier, and Captain Hicks are predicated on actions by them as ADOC supervisors.  She asserts that these defendants, as supervisors, should have done more to remedy her grievances at ADOC. "'Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability.'" <u>Belcher v. City of Foley, Ala.</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (quoting <u>Hardin v. Hayes</u>, 957 F.2d 845, 849 (11th Cir. 1992)).  Supervisors may be held liable under § 1983 "'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged

15

constitutional violation.'"   Braddy v. Fla. Dep't of
Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir.
1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th
Cir. 1990)).   Because Penn has not proffered the
necessary evidence to establish a supervisory claim,
summary judgment will be granted against Penn on her §
1983 claim as to these defendants in their individual and
official capacities.


### 3.  Sex Discrimination Claims
### Against  Sergeant  Riley and Lieutenant Loman

As stated, Penn claims sex discrimination, charging
that she was singled out for ill treatment because she is
female and also because she is not in a sexual
relationship with any of her supervisors.  The defendants
argue that Penn cannot prove that she was subjected to
disparate treatment.

In an action alleging disparate treatment, a
plaintiff must prove an intentional discriminatory motive
by presenting either direct or circumstantial evidence.

16

See <u>Lee v. Russell County Bd. Of Educ.</u>, 684 F.2d 769, 773-74 (11th Cir. 1982).  "Direct evidence" is evidence which, "if believed, proves the existence of a fact in issue without inference or presumption."  <u>Burns v. Gadsden State Community College</u>, 908 F.2d 1512, 1518 (11th Cir. 1990) (citation omitted).  "Direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 641 (11th Cir. 1998) (internal quotations omitted).  "Only the most blatant remarks, whose intent could be nothing other than to discriminate," will constitute direct evidence of discrimination.  <u>Earley v. Champion Int'l. Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990) (internal quotations omitted).

While Penn has made allegations of harassment and described interpersonal disagreements with supervisors

17

and co-workers, she has not provided any direct evidence of unlawful discrimination. In fact, in her deposition, she admitted that she either did not believe the defendants' actions were motivated by discriminatory motives or that she simply did not know.

Absent direct evidence, Penn may attempt to establish intentional discrimination through circumstantial evidence. When a plaintiff offers circumstantial evidence of discriminatory intent, the court applies the "familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and subsequent cases." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). "Under this framework, the plaintiff must establish a prima facie case of discrimination." Id. "By establishing a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against [her]." Id. "The burden then shifts to the employer to rebut this presumption by producing evidence

that its action was taken for some legitimate, non-discriminatory reason." Id. "Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. at 1272-73. "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Id. at 1273.

Penn may establish a prima-face case of disparate treatment on the basis of sex by showing that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she

was qualified to do the job."   Burke-Fowler v. Orange

County, 447 F.3d 1319, 1323 (11th Cir. 2006).

As to what constitutes an adverse-employment action,

the Eleventh Circuit has explained:

> "Whatever the benchmark, it is clear
> that ... the employer's action must
> impact the 'terms, conditions, or
> privileges' of the plaintiff's job in
> a real and demonstrable way.  Although
> [this] does not require proof of direct
> economic consequences in all cases, the
> asserted impact cannot be speculative
> and must at least have a tangible
> adverse effect on the plaintiff's
> employment.  We therefore hold that, to
> prove adverse employment action ..., an
> employee must show a serious and
> material change in the terms,
> conditions, or privileges of
> employment."

Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239

(11th Cir. 2001).   Moreover, "[c]riticisms, negative

evaluations, and temporary and non-substantial changes in

work assignments are not actions that have a 'serious and

material effect' on the terms and conditions of

employment."   White v. Hall, 389 Fed. Appx. 956, 960

(11th Cir. 2010) (citing Davis, 245 F.3d. at 1241-44).

20

Here, Penn alleges that she has been criticized and embarrassed.  She further alleges that, as a result of this criticism and embarrassment, she was constructively dismissed, that is, that she felt compelled to retire. Notwithstanding these allegations, though, Penn has not shown that she suffered an adverse-employment action. For example, she has not been terminated, demoted, suspended, or even officially reprimanded or warned; nor does the evidence support a constructive discharge. Thus, even if Penn's allegations are accepted as true, she has not made a prima facie showing of discrimination.

Further, even if the court found that Penn had suffered an adverse-employment action, she has not shown that "her employer treated similarly situated employees outside of her protected class more favorably than she was treated."  Burke-Fowler, 447 F.3d at 1323.

For both of these reasons, therefore, summary judgment will be granted in favor of Riley and Loman on

Penn's § 1983 sex-discrimination claims against them in their individual and official capacities.


### 4.  Hostile-Work-Environment Claims

Penn claims that the incidents involving her and Riley and Loman, as well as the disagreement about her use of handicapped parking, all created a hostile-work environment.  She admitted that she has never been subjected to unwanted sexual advances by any of the defendants in this case.  In addition, although her complaint alleges discrimination based on the fact that she was not in a sexual relationship with her supervisors, she admitted that she has no knowledge about any of her supervisors' sexual relationships.

With respect to hostile-work-environment claims, the Eleventh Circuit has stated:

> "To establish a hostile work environment claim ... an employee (or former employee) must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [his or her] employment.'  Pa. State

> Police v. Suders, 542 U.S. 129, 133,
> 124 S.Ct. 2342, 2347, 159 L.Ed.2d 204
> (2004).     This  requires  that  the
> employee prove the following: '(1) that
> he [or she] belongs to a protected
> group; (2) that he [or she] has been
> subject to unwelcome harassment; (3)
> that the harassment [was] based on a
> protected  characteristic  of  the
> employee, such as national origin; (4)
> that the harassment was sufficiently
> severe or pervasive to alter the terms
> and conditions of employment and create
> a  discriminatorily  abusive  working
> environment; and (5) that the employer
> is responsible for such environment
> under either a theory of vicarious or
> of direct liability.'"

Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009)

(quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d

1269, 1275 (11th Cir. 2002)).  As to the fourth element

of this test, "this element contains both subjective and

objective components; that is, 'to be actionable, [the

harassment] must result in both an environment that a

reasonable person would find hostile or abusive and an

environment that the victim subjectively perceive[s] to

be abusive.'"  Id. at 1297 (quoting Miller, 277 F.3d at

1276).

23

Penn has presented no evidence to support a hostile-work-environment claim. Thus, summary judgment will be granted against Penn on her § 1983 hostile-work-environment claims.

### 5. Retaliation Claims

Penn also claims that she has suffered from retaliation. "[A] plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment action; and (3) [s]he established a causal link between the protected activity and the adverse action." Id. at 1307-08.

Penn has not presented any evidence to show that she has satisfied any of these elements. Also, the mere fact that she filed complaints and grievances does not demonstrate that she engaged in "statutorily protected activity." See Ross v. City of Perry, Ga., 396 Fed. Appx. 668, 671 (11th Cir. 2010).

Therefore, summary judgment will also be granted against Penn on her § 1983 retaliation claims.

### 6.  Other Constitutional Claims

Finally, Penn claims violations of her due-process and equal-protection rights under the Fifth and Fourteenth amendments, as well as violations of her First Amendment rights.

Because the Fifth Amendment constrains only federal action, it cannot serve as a basis of Penn's claims. <u>See Knoetze v. U.S. Dep't of State</u>, 634 F.2d 207, 211 (5th Cir. Jan. 12, 1981) (citing <u>Perry v. Sinderman</u>, 408 U.S. 593 (1972)).[1]  With respect to Penn's rights under the Fourteenth amendment, the court has already explained that Penn has not been subjected to any unlawful discrimination.  Because Penn also has not suffered an

_____

1.  The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

25

adverse-employment action, she could not have been deprived of a liberty or property interest that would support a § 1983 claim based on an alleged violation of her due-process rights under the Fourteenth Amendment. See Wu v. Thomas, 847 F.2d 1480, 1485 (11th Cir. 1988).

To establish a First Amendment retaliation claim, "the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted). As to the second prong, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. at 1254. Penn alleges that, after filing grievances against Riley and

26

Loman, the two defendants went to her supervisors in an
attempt to get her in trouble without any cause.  Penn
does not, however, provide any details about what Riley
and Loman said to Penn's supervisors, nor has she
described any actions taken against her as a result of
their efforts.  Thus, because Penn has not demonstrated
any adverse consequences for filing her complaints and
grievances, she is not able to establish her First
Amendment retaliation claims.

Accordingly, summary judgment will also be granted
against Penn on her § 1983 claims under the First, Fifth,
and Fourteenth amendments.


### 7.  Qualified Immunity

The individual defendants also argue that they are
entitled to qualified immunity with respect to Penn's
§ 1983 claims.  To the extent the defendants have been
sued in their individual capacities, they are permitted
to raise this defense.  Under the qualified-immunity

27

rule, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Holmes v. Kucynda, 321 F.3d 1069, 1077-78 (11th Cir. 2003).

For the reasons already given earlier in this opinion, Penn has not shown that the individual defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known. Therefore, because of qualified immunity, summary judgment will be entered against Penn on her § 1983 claims for damages against the defendants in their individual capacities.

### F.  State Claims

As stated, Penn also brings several state claims against all defendants, including claims for libel and

slander, intentional infliction of emotional distress, and tortious interference with a contractual relationship.[2]

As a preliminary issue, the court must determine whether it should reach the merits of these claims, given that summary judgment will granted against Penn on all her federal claims. A district court has discretion to decline supplemental jurisdiction over a claim when it "has dismissed all claims over which it has original

_____

2. In count IV of her complaint, Penn purports to assert 15 separate state claims. It appears, however, that Penn has confusingly mixed both federal and state claims in this count, with the majority being federal claims. Penn has not clarified this confusion in her pleadings and the court addresses Penn's federal claims elsewhere in this opinion. As stated, the court has identified that the only unique state claims presented in this count are those for libel and slander, intentional infliction of emotional distress, and tortious interference with a contractual relationship. Finally, although Penn also purports to bring a state claim of harassment against all defendants, the court is not aware of any authorities establishing harassment as a civil tort in Alabama, nor has Penn provided any such authorities. To be clear, Penn does argue that certain defendants violated Alabama's criminal harassment statute, but she does not show that harassment constitutes a civil tort in Alabama.

jurisdiction." 28 U.S.C. § 1367(c)(3). Factors to be taken into account include "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).[3] Courts are strongly encouraged to dismiss state claims when the federal claims have been resolved prior to trial. See id. (concluding that "federal court[s] should decline the exercise of [supplemental] jurisdiction by dismissing the case without prejudice" when the federal law claims have been dismissed prior to trial).

Ordinarily, dismissing state claims without prejudice will not prejudice a plaintiff, due to the fact that the period of limitations for filing a state law claim in

_____

3.  Carnegie-Mellon was decided before the passage in 1990 of 28 U.S.C. § 1367, which expressly authorized district courts to decline exercise of supplemental jurisdiction over state-law claims if all claims within the court's original jurisdiction had been dismissed. Nevertheless, Carnegie-Mellon remains useful in analyzing when district courts should decline to exercise supplemental jurisdiction.

state court is tolled "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). In this case, however, Penn could lose her claims against the state defendants because "the tolling prevision does not apply to claims filed in federal court against nonconsenting States." Raygor v. Regents of the University of Minnesota, 534 U.S. 533, 536 (2002). Further, the state defendants are unwilling to waive the statute of limitations defense for these claims. Therefore, in the interest of fairness, the court will maintain its supplemental jurisdiction and reach the merits of Penn's state claims.


1. Libel and Slander

Penn has brought claims of libel and slander against all defendants. As to each defendant, to establish a defamation claim, Penn must show "'[1] that the defendant was at least negligent [2] in publishing [3] a false and

31

defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).'" <u>Ex Parte Crawford Broadcasting</u>, 904 So.2d 221, 225 (Ala. 2004) (quoting <u>Delta Health Group, Inc. v. Stafford</u>, 887 So.2d  887, 891 (Ala. 2004)).

Defamation claims consist of libel actions and slander actions.  Libel actions are "'predicated on written or printed aspersions of character,'" whereas slander actions are predicated on "'oral defamation.'" <u>Butler v. Town of Argo</u>, 871 So.2d 1, 16 (Ala. 2003) (quoting <u>Ceravolo v. Brown</u>, 364 So.2d 1155, 1157 (Ala. 1978)).  "'This distinction, however, is merely in respect to the question as to whether the imputed language or words are actionable per se.'" <u>Id</u>. (quoting <u>Ceravolo</u>, 364 So.2d at 1157).

"'In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does

not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se.'" Id. (quoting Ceravolo, 364 So.2d at 1157). In contrast, "to constitute slander actionable per se, there must be an imputation of an indictable offense involving infamy or moral turpitude[.]'" Id. at 17 (quoting Ceravolo, 364 So.2d at 1157). Slander is also actionable per quod where the action is "founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though it falls short of imputing the commission of such crime or misdemeanor." Id. (quoting Ceravolo, 364 So.2d at 1157). However, where slander is actionable per quod, "'the plaintiff must allege and prove special damages as an element of the cause of action.'" Id. (quoting Ceravolo, 364 So.2d at 1157). "'Special damages are the material harms that are the intended result or natural consequence of the slanderous statement ... and the general rule is that they are limited to material loss capable of being

33

measured in money.'"   Id. at 18 (quoting Shook v. St.
Bede School, 74 F.Supp.2d 1172, 1180 (M.D. Ala. 1999)
(Thompson, J.)).

"Truth is an absolute defense to a defamation claim."
S.B. v. Saint James School, 959 So.2d 72, 100 (Ala. 2006)
(citing Foley v. State Farm Fire & Cas. Ins. Co., 491
So.2d 934 (Ala. 1986)).   In addition, "[i]n libel and
slander actions, a showing that the alleged defamation
was made on a privileged occasion or under circumstances
and   conditions   which   made   it   privileged   in   law
constitutes a complete defense."   Nelson v. Lapeyrouse
Grain Corp., 534 So.2d 1085, 1092 (internal quotations
omitted)).

Although Penn does not provide any explanation in her
filings  as  to  what  evidence  supports  her  defamation
claims, the court assumes, based on her deposition, that
these claims are based on her disagreements with Riley
and  Napier.   The  court  notes,  though,  that  Penn's
allegations as to Riley are not entirely clear from the

deposition.   With respect to Riley, Penn appears to allege that Riley lied about her when she stated, verbally and in writing, that (1) Penn herself lied about Riley's having cursed at her; and (2) that Penn was reading a newspaper during her shift, in violation of workplace rules.   With respect to Napier, Penn alleges that Napier somehow defamed her by writing her up for improperly using handicapped-parking spaces at Kilby.

As a preliminary matter, Penn has made allegations against only Riley and Napier, and thus there are no allegations at all to support her defamation claims against the other defendants.   Further, Penn's defamation claims against Napier must fail since "[t]ruth is an absolute defense to a defamation claim."   <u>Saint James School</u>, 959 So.2d at 100.   Penn admitted, in her deposition, that she had improperly used her daughter's handicapped-parking sticker.   Thus, because the substance of what Napier said or wrote about Penn regarding that

35

incident was true, these statements cannot support a claim for defamation.  Id.

However, even assuming that Riley and Napier's statements about Penn were false, Penn has not shown that the outcomes of these situations exposed her "to public ridicule or contempt," nor has she shown that they attributed to her "an indictable offense involving infamy or moral turpitude."  Butler, 871 So.2d at 16-17. Therefore, she has not established claims for defamation per se.  See id.  Further, any slander per quod claim must also fail because Penn has not pled or proven "special damages."  See id. at 18.

Finally, the defendants also argue that Riley and Napier's statements about Penn were protected by conditional or qualified privilege, given that these statements concerned the performance and discipline of a subordinate employee.  See id. at 26; Montgomery v. Big B, Inc., 460 So.2d 1286, 1287 (Ala. 1984).  Because the court finds that Penn has not established defamation

36

claims against Riley nor Napier regardless of any privileges these defendants may have, it need not reach this issue.

Accordingly, summary judgment will be granted against Penn on her libel and slander claims as to all defendants.

### 2.  Intentional Infliction of Emotional Distress

Penn brings claims of intentional infliction of emotional distress against all defendants.  The Alabama tort of outrage "is essentially equivalent to what many states refer to as 'intentional infliction of emotion distress.'"  K.M. v. Ala. Dep't of Youth Servs., 360 F.Supp.2d 1253, 1259 n.4 (M.D. Ala. 2005) (Thompson, J.). In order to prove a claim of outrage, a plaintiff must establish that, "(1) the defendant ... intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act [was] extreme and outrageous; (3) the act ... caused

plaintiff['s] distress; and (4) plaintiff['s] emotional distress [was] so severe that no reasonable person could be expected to endure it." Id. at 1259 (citing Harrelson v. R.J., 882 So.2d 317, 322 (Ala. 2003)).  The Alabama Supreme Court has emphasized "that this tort does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  American Rd. Serv. Co. v. Inmon, 394 So.2d 361, 364-65 (Ala. 1980) (citation omitted). Rather, recovery is appropriate for only "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365.  The court is aware of "only three limited circumstances" where the Alabama Supreme Court has recognized this tort: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and

(3) egregious sexual harassment." <u>Carraway Methodist</u>
<u>Health Systems v. Wise</u>, 986 So.2d 387, 401 (Ala. 2007).

In this case, Penn articulates no specific basis for
these claims in her pleadings. Her deposition shows,
however, that these claims are based on the previously
discussed interactions with Riley, Loman, and Napier.
Because the alleged conduct of these defendants cannot be
viewed as "beyond all possible bounds of decency," so
that it must "be regarded as atrocious and utterly
intolerable in a civilized society," summary judgment
will be granted against Penn on her intentional-
infliction-of-emotional-distress claims. <u>Inmon</u>, 394
So.2d at 365.


### 3. Tortious Interference with a Contractual Relationship

Penn also brings claims of tortious interference
with a contractual relationship against all defendants.
The elements of a claim for tortious interference with a
contract are "'(1) the existence of a contract or

business relation, (2) the defendant's knowledge of the contract or business relation, (3) intentional interference by the defendant with the contract or business, and (4) damage to the plaintiff as a result of the defendant's interference.'" Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc., 850 So.2d 259, 265 (Ala. 2002) (quoting Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 246-47 (Ala. 1992)).

In this case, as with her other state claims, Penn articulates no specific basis for these claims in her pleadings.  In her deposition, Penn testified that her interactions with Riley, Loman, and Napier could have impacted her participation in her deferred retirement option plan (DROP).  However, she admitted that she was not compelled to quit her job  and that she would begin reaping the full benefits of her retirement and DROP starting in January 2011.  Thus, because Penn has not proven the elements of these claims and because she admits that her ability to use DROP has not been impeded,

**40**

summary judgment will be granted against Penn as to all defendants.

4.   Sovereign Immunity and State-Agent Immunity

The State of Alabama, ADOC, and official-capacity defendants also argue that they are entitled to sovereign immunity under state law, and the individual-capacity defendants argue that they are entitled to state-agent immunity.  See Ala. Dep't of Corrections v. Montgomery Co. Comm'n, 11 So.3d 189, 191-92 (Ala. 2008) (explaining that sovereign immunity is a jurisdictional bar that prohibits actions against the State of Alabama and its agencies); Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000) ("A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising his or her judgment in the administration of a department or agency of government, including, but not limited to ... hiring,

firing, transferring, assigning, or supervising personnel[.]").

However, because the court has already determined that all defendants are entitled to summary judgment on Penn's state claims, it need not consider whether sovereign or state-agent immunity applies in this case.

\* \* \*

Thus, for the foregoing reasons, the court concludes that summary judgment should be granted in favor of the defendants and against Penn on each of her claims.

An appropriate judgment will be entered.

DONE, this the 19th day of September, 2011.

        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE